[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-11435

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIAM DANIEL LEONARD,

Defendant- Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00026-CEM-RMN-1

————————————————

Before ROSENBAUM, ABUDU, AND ED CARNES, Circuit Judges.

PER CURIAM:

William Leonard appeals his conviction and sentence for knowingly attempting to persuade, induce, entice, or coerce an individual whom he believed was a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). He contends that the government presented insufficient evidence at trial to support his conviction and that the district court imposed a procedurally and substantively unreasonable sentence of 240 months imprisonment. For the reasons that follow, we affirm.

## I.

Leonard pleaded not guilty to a charge of violating 18 U.S.C. § 2422(b). At a jury trial, the government presented the following evidence.

An agent with Homeland Security Investigations testified that as part of an undercover investigation in 2021, he published posts on the website "Society." That dark web website contains content that attracts people with sexual interest in children. It hosts pages with titles like "boy lover," "child lover," and "incest lover."

The agent made two posts on the Childlovers page, one on August 25, 2021 and one on October 13, 2021. He offered a "real life" opportunity he could "share," and he provided an email address where people with interest could contact him. On November 12, 2021, Leonard responded in an email to the agent: "I saw your

ad on society.com site about you sharing your 13-year-old girl. That sounds fucking great. And I'm as serious as you can get."

Leonard asked the agent to provide "anything that would prove you're not a law enforcement officer or working for an officer." The agent responded that he could "send a pic . . . of [his] 13 yo [year-old] baby girl," noting: "cops can't." The agent also asked, "What are you into?"

Leonard replied that pictures "would be nice" and that he was "into oral sex, giving and receiving; vaginal sex, in as many different positions as I can imagine; and a little anal sex." The agent then emailed Leonard a picture "just to prove we're [i.e., he and his daughter were] real." He attached a photograph of himself and of a victim advocate who was working with the agent (not a minor) pretending to be his daughter.

On November 15, 2021, Leonard asked, "So how do we go about arranging a meeting[?]" He said he could "drive down" from Maryland. The agent said that he and his daughter lived in Florida. Leonard said the drive would take him two to three days. Leonard proposed two specific dates and suggested he could take a "Greyhound [bus] down, get a rental [car] and motel room and then I come over when it's convenient for you."

The agent told Leonard that his daughter was in the seventh grade and would need a note to miss school. Leonard responded that he did not "see a need to take her out of school" but that he "could be wrong."

The agent also told Leonard he would "like to hear how [he] want[ed] to use her." In response, Leonard provided a graphic description of how he wanted to engage in oral, vaginal, and anal sex with her.

The agent gave Leonard more information about his daughter, stating: "Even though she's 13, she's really cool." The agent also said he wanted to "keep" his daughter "very clean." Leonard indicated that he had no STDs and said, "I'll bring condoms, just to be on the safe side." Leonard also sent the agent a picture of himself in exchange for another picture of the daughter.

On December 1, 2021 Leonard asked about the daughter's age again. He told the agent he had found an older post by that agent from September 2019 in which the agent represented that his daughter was 13 years old (meaning she would be about 16, not 13, by December 2021). Leonard added: "Sixteen is just fine with me, as long as I'm going to have some fun with a beautiful young lady, it's going to be great." On the stand, the agent testified that he had made the September 2019 post as part of a different undercover investigation. But he told Leonard over email that his daughter had actually been 11 when he made the earlier post, and that she had "just turned" 14. The agent said, "If you change your mind, that is okay." He said he didn't want Leonard "freaking out when [he] saw how small she is." Leonard replied that he had not changed his mind and said, "I could tell how small she is from the photo. I don't get freaked out that easily."

Then Leonard brought up a different minor victim. He asked the agent whether he could bring along "Angela," a 15-year-old girl from Louisiana whom he had met on Society, so that Leonard, Angela, and the daughter could have a "threesome." The agent asked how Leonard knew that Angela wasn't a cop. Leonard explained: "[S]he's coming from out of state, a cop can't do that, and there is no crime big enough for the feds to get involved in." Leonard also said that he would "check her out, i.e., get some sexual pleasing," before he mentioned the agent and his daughter to Angela. Leonard reflected on his decision to include Angela, stating to the agent: "Everything I'm doing for the last year has sounded fishy. My luck will run out sooner or later, but until then, I'm going to enjoy the ride."

Crystallizing their plans for a meetup, Leonard told the agent he would drive down to him and arrive on December 7, 2021. Leonard told the agent that he had rented a motel where he planned to stay with Angela, and he gave the agent the address of the motel. Leonard started his trip and provided the agent with updates during his travel, informing the agent that he was in North Carolina on December 6. Leonard also mentioned that he was working on sending money to Angela so she could join them.

By December 7, Leonard had arrived in Florida. He asked the agent what time he could meet up that day. The agent mentioned that he had left his daughter home from school, and he gave Leonard a location (a retail parking lot) where they could meet. The agent and Leonard met at that spot, and the agent confirmed

Leonard's identity. The agent recorded the conversation that followed. Leonard said that he had traveled to have sex with the daughter, that he had brought condoms with him, and that he was also planning to meet another underage girl (Angela).

Then additional law enforcement offers arrived and arrested Leonard. About 15 to 20 minutes later, a different special agent interviewed him and recorded the interview. Among other things, Leonard confirmed to that special agent that he had planned to bring an underage girl (Angela) from Louisiana to Florida to have sex with her. He also revealed to the special agent that he had been communicating with yet another minor female ("A.W.") online.

Law enforcement agents found items in Leonard's car including two boxes of condoms which appeared unopened, camera equipment, and a notebook that said "Dad share 13-year-old girl, watches" next to the agent's email address.

Authorities did not discover any communications between Leonard and "Angela." But the Homeland Security Investigations agent testified that he found about six posts from Angela on Society and saw that she represented she was a minor.

After the government presented its evidence at trial, Leonard moved for a judgment of acquittal. The court denied the motion.

Leonard took the stand in his own defense. He admitted to having an account on Society, to emailing the Homeland Security Investigations agent, and to traveling from Maryland to Florida to meet the agent. But he denied that he ever intended to have sex

with a minor. Instead, it was all a cry for help. He testified that he suffered from PTSD, depression, anxiety, and suicidal thoughts, which drove him to "go[] over the top trying to get somebody to respond" to him on the internet. Claiming that he wanted to commit suicide, Leonard stated that he thought the agent would "help me end my life," though he had never mentioned suicide to the agent.

Leonard also claimed that he knew the girl in the photograph he had received from the agent was actually an adult. As for his incriminating responses to in-person questions from law enforcement, he blamed his bad hearing and an inclination to tell the officers what they wanted to hear. He denied ever having met Angela. And he claimed the condoms in his car had been there for years.

Pressed on cross examination, Leonard also elaborated on his relationship with minor A.W. He acknowledged that A.W. had sent him photographs with "partial" nudity. He admitted that he had shown up at her house uninvited after deciphering her home address from metadata in one of the photographs, but he was unable to meet up with her. He testified that, after A.W. stopped communicating with him, he sent her a letter threatening to show her photographs to her neighbors if she didn't speak to him again.

After resting his case, Leonard again moved unsuccessfully for acquittal. The jury found Leonard guilty of attempted enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

The presentence investigation report (PSR) contained additional information about Leonard's history with A.W.  The district court adopted those facts, which were undisputed.  Leonard started an online relationship with A.W. when she was 14, solicited and received nude pictures from her, and showed up at her house uninvited.

At the sentence hearing, a task force officer with Homeland Security Investigation testified that Leonard had pressured A.W. to send him nude and pornographic pictures and videos and to obtain other child sexual abuse material for him, which she did.  That testimony was based on the task force officer's review of communications between Leonard and A.W. and on the officer's conversation with a case agent who had attended an interview with A.W.

In his sentencing memorandum and at his sentence hearing, Leonard emphasized the following facts as mitigation: that his parents had been abusive to him, that he had served three years in the U.S. Army before receiving an honorable discharge, that an evaluation he took while in the army revealed he could have "high-functioning autism," that he suffers from PTSD from both childhood experiences and from his time in service, that he has attempted suicide "way more than ten times," and that he experiences depression and anxiety.  At the hearing, Leonard repeated his version of the story in a statement to the court: his "intent" in communicating with the Homeland Security Investigations agent was not to coerce a minor into sex, but instead "to solicit help in ending my life."

The court accepted the guidelines imprisonment range as calculated in the PSR: 120 to 121 months. The statutory maximum was life. The court varied upwards from the guidelines range, sentencing Leonard to 240 months imprisonment to be followed by 15 years of supervised release. The court considered Leonard's military service and mental health issues. But while it recognized that he was "a disabled military veteran" with "physical challenges," the court also emphasized that Leonard, a fifty-three-year-old man, was sexually attracted to "young girls" and had "caused a lot of damage." The court observed that Leonard had "paint[ed himself] as a victim" instead of taking responsibility for his actions, and it determined that Leonard's story that he had traveled to Florida as a suicide attempt was not credible. Stating that it had considered the guidelines and the 18 U.S.C. § 3553(a) factors, the court found that the 240-month sentence was "sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing." As support for the upward variance, the court stated that it "incorporate[d] by reference the evidence presented at sentencing along with all of the evidence presented in front of the jury at trial, which compelled the [c]ourt to impose the sentence it did."

Leonard contends that the government presented insufficient evidence to support his conviction and that his sentence was procedurally and substantively unreasonable.

## II.

We first address the sufficiency of the evidence supporting Leonard's conviction. Then we consider his challenges to the reasonableness of his sentence.

## A.

"To prove that a defendant violated 18 U.S.C. § 2422(b) by attempting to induce a minor to engage in sexual activity, the government must show that the defendant (1) had the specific intent to induce a minor to engage in sexual activity, and (2) took a substantial step toward the commission of that offense." *United States v. Gillis*, 938 F.3d 1181, 1190 (11th Cir. 2019). "[A] defendant may be convicted under § 2422(b) even if he attempted to exploit only a fictitious minor and communicated only with an adult intermediary." *Id.*

Leonard asserts that the government failed to carry its burden of showing that he had the requisite specific intent. He contends that he never intended to engage in sexual activity with a minor; instead, he "believed" the supposed daughter of the Homeland Security Investigations agent "was a small adult." In Leonard's view, it was "clear [he] was looking for someone to assist him in ending his life," not looking to have sex with a minor.

"We review *de novo* both the denial of a motion for a judgment of acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Keen*, 676 F.3d 981, 989 (11th Cir. 2012). We will affirm the verdict "if any

reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Wilson*, 788 F.3d 1298, 1308 (11th Cir. 2015) (quotation marks omitted).

There was more than enough evidence for a jury to find that Leonard had the specific intent of inducing a minor to engage in sexual activity. For weeks Leonard communicated with someone who claimed to be a father inviting Leonard to come visit so Leonard could have sex with the father's minor daughter. Leonard made plans to travel to the minor's location for the express purpose of engaging in sexual activities with her. He described in graphic detail what he wanted to do to the minor. And he openly discussed his understanding that the girl was 13, that she had recently turned 14, that she looked small in a photograph, and that she was in the seventh grade.

Those communications are sufficient to prove specific intent beyond a reasonable doubt. *See, e.g.*, *Gillis*, 938 F.3d at 1190 (concluding that "[a]mple evidence" supported a 18 U.S.C. § 2422(b) conviction where trial evidence showed that the defendant "engaged in a two-week online conversation with a person he believed to be the parent of a minor daughter, during which he discussed in detail plans to meet and engage in sexual activity with the daughter," which "demonstrated his sexual interest in the daughter and intent to induce [her . . .] to engage in sexual activity"); *United States v. Farley*, 607 F.3d 1294, 1334 (11th Cir. 2010) ("What [the defendant] did say to [a parent] on the subject of sex with her daughter is

more than enough to show his criminal intent," including his "describ[ing] in sickening detail what he intended to do to the little girl"); *United States v. Murrell*, 368 F.3d 1283, 1287–88 (11th Cir. 2004) (concluding that the specific intent element of an 18 U.S.C. § 2422(b) charge was satisfied where the defendant's "agreement with the father, who was acting as an agent or representative, implied procuring the daughter to engage in sexual activity").

Leonard also asserts that the government failed to show that he took a substantial step toward committing the offense because it was not enough to show only that he "traveled to Florida." To the contrary, there was sufficient evidence for the jury to find against Leonard on that element, too. After making plans to visit the minor girl for the express purpose of having sex with her, Leonard traveled over two days across multiple state lines from Maryland to Florida to get to the minor's location. And after agreeing that he would use condoms when having sex with the minor, Leonard showed up with a box of condoms.

Given that evidence a jury could find, as the jury in this case did, that he had taken a substantial step toward inducing a minor into sexual activity. *See, e.g.*, *Gillis*, 938 F.3d at 1190 (concluding that the defendant "took a substantial step toward consummating that plan [to have sex with a minor] when he drove nearly an hour from his home" to meet up with her); *United States v. Lee*, 603 F.3d 904, 915 (11th Cir. 2010) (concluding there was sufficient evidence to find that the defendant took a substantial step where he "requested assistance" from a parent in having sex with her daughters

and where, "[o]ver the course of several months, he repeatedly discussed when and, in graphic detail, how he wanted to complete the act," even though he never made "firm plans to travel"); *Murrell*, 368 F.3d at 1288 (concluding that defendant took a "substantial step" where he "made several explicit incriminating statements" to an officer (posing as a minor's father) about intending to have sex with the minor, "traveled two hours to another county to meet" the minor, and carried items including "a box of condoms when he arrived at the meeting site").

A reasonable construction of the evidence allowed the jury to find beyond a reasonable doubt that Leonard violated 18 U.S.C. § 2422(b). *See Wilson*, 788 F.3d at 1308. We affirm the conviction.

**B.**

We review the reasonableness of a sentence for abuse of discretion. *See United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). The party challenging the sentence bears the burden of showing that it is unreasonable. *See United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023).

The district court applied an upward variance to impose a sentence of 240 months imprisonment, which was 119 months above the top of Leonard's guidelines range. Leonard contends that his sentence was both substantively and procedurally unreasonable. His argument is the same under both theories of unreasonableness. Leonard asserts that it "appears" that the district court "failed to consider" the factors listed under 18 U.S.C. §

14                    Opinion of the Court                    24-11435

3553(a), his military service, and his struggle with mental illness, including his history of attempting suicide.

The district court did consider those factors; it just declined to give them the weight that Leonard wanted it to give them. During the sentence hearing, the court explicitly acknowledged that Leonard was a "disabled veteran," that he had "issues of depression," that he had various "physical challenges," and that he had "tried to kill [him]self multiple times." And the court stated that its sentencing decision reflected its review of the PSR and all the evidence presented during sentencing and at trial. The court considered the discussions of the potential mitigating factors presented in the PSR, in Leonard's sentencing memorandum, and in his counsel's argument at the sentence hearing.

The court also stated that it considered the 18 U.S.C. § 3553(a) factors. After considering those factors, the court determined that the 240-month sentence it imposed was "sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing." In addition to the factors identified by Leonard, the court took into account the facts that he had refused to take responsibility for his crime, that he had cast himself as the victim, and that his attraction to young girls had "caused a lot of damage."

Leonard has failed to carry his burden of showing that the sentence imposed was unreasonable. His only basis for attacking the procedural reasonableness of the sentence is his incorrect assertion that the court failed to consider something it should have considered. *See United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020)

("A sentence can be procedurally unreasonable if the district court improperly . . . failed to consider the 18 U.S.C. § 3553(a) factors," among other things.)  The court did consider everything that Leonard says it missed, including the § 3553(a) factors.  *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) ("[I]n imposing a reasonable sentence, the district court need only acknowledge that it considered the § 3553(a) factors.") (quotation marks omitted).

As to substantive unreasonableness, we will vacate a sentence on that basis only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted).  Because the district court has an "institutional advantage in making sentence determinations," it gets "considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation marks omitted).

The district court did not abuse its discretion in this case.  It weighed Leonard's proposed mitigating circumstances against his history of repeatedly pursuing sexual relationships with underage girls, his act of pressuring a minor (A.W.) to send him nude photos of herself, his decision to show up uninvited at that minor's house after finding her location by extracting metadata from those photos, his admission to threatening to release those photos when she stopped communicating with him, and his persistent refusal to take

accountability for his actions.  The court was within its discretion to vary upward to impose a sentence of 240 months.  *See Irey*, 612 F.3d at 1190.  The fact that his sentence was below the statutory maximum (life) provides further support for its substantive reasonableness.  *See United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021).

### III.

Leonard's conviction and sentence are **AFFIRMED.**